UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | ) Bankruptcy No. 09 B 49694 |
| | ) |
| DAWN CAVAGNETTO, | ) Chapter 7 |
| | ) |
| Debtor. | ) Judge Donald R. Cassling |
| | ) |
| WILLIAM STOLZ, | ) |
| | ) |
| Plaintiff, | ) Adversary No. 10 A 00482 |
| | ) |
| v. | ) |
| | ) |
| DAWN CAVAGNETTO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment. For the reasons stated herein the Plaintiff's motion is granted. The Court finds that the $7,375.43 debt is nondischargeable under 11 U.S.C. § 523(a)(5) and the $2,202.50 and $1,500.00 debts are nondischargeable under 11 U.S.C. § 523(a)(15). Because the $5,952.85 debt has been satisfied, the Court need not make a determination of whether this debt would be nondischargeable. The Defendant's motion for summary judgment is denied.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. BACKGROUND

This adversary proceeding arises out of domestic support obligations imposed upon the Defendant, Dawn Cavagnetto ("Cavagnetto"), in the state court marital dissolution lawsuit (the

"Divorce Proceedings") she initiated against the Plaintiff William Stolz ("Stolz"). According to the amended complaint (the "Complaint") these obligations are comprised of the following:

1. A credit in the amount of $5,952.85 awarded to Stolz as an offset against future reimbursements payable to Cavagnetto for child care expenses.

2. Attorney's fees in the amount of $7,375.43 awarded to Stolz under 735 Ill. Comp. Stat. 5/508(b).

3. Attorney's fees in the amount of $2,202.50 awarded to Stolz under 735 Ill. Comp. Stat. 5/508(b).

4. A sanctions award of $1,500.00 to Stolz against Cavagnetto under Illinois Supreme Court Rule 137, which was based on a state-court complaint for quiet title and fraud filed by Cavagnetto that the state court found to be baseless.

Stolz claims that the first and second of these debts are nondischargeable under 11 U.S.C. § 523(a)(5) and that the third and fourth are nondischargeable under 11 U.S.C. § 523(a)(15). Cavagnetto has asserted a counter-claim against Stolz, alleging that she is entitled to damages arising out of a claim filed against her in her underlying bankruptcy case by a third-party creditor. She asserts that Stolz is liable under that claim as a co-debtor.

On August 18, 2012, Cavagnetto filed her motion for summary judgment (Docket No. 102) ("Cavagnetto's Motion").

On August 20, 2012, Stolz filed his motion for summary judgment (Docket No. 106) ("Stolz's Motion").

### III. UNDISPUTED FACTS

Stolz and Cavagnetto were married on September 1, 1996. (Def. 7056-1 Stmt. ¶ 3; Pl. 7056-2 Stmt. ¶ 3.) One child was born of that marriage. (*Id.*) The parties acquired a parcel of real estate located in Berwyn, Illinois, which, from July 1998 to July 2002, they operated as a

2

rental property (the "Berwyn Property"). (Def. 7056-1 Stmt. ¶ 5; Pl. 7056-2 Stmt. ¶ 5.)

Stolz's mother and step-father, Clare and Fred Barton (the "Bartons") loaned Stolz and Cavagnetto the funds necessary to purchase the Berwyn Property and took a mortgage to secure their loan. (Def. 7056-1 Stmt. ¶¶ 4 & 6; Pl. 7056-2 Stmt. ¶¶ 4 & 6.) Payments on the loan of $503.75 per month came due beginning on April 1, 1996. (Def. 7056-1 Stmt. ¶ 6; Pl. 7056-2 Stmt. ¶ 6.) The Bartons did not record the mortgage until January 2, 2001. (Def. 7056-1 Stmt. ¶ 7; Pl. 7056-2 Stmt. ¶ 7.)

On January 4, 2000, Cavagnetto filed a petition for dissolution of marriage. (Def. 7056-1 Stmt. ¶ 9; Pl. 7056-2 Stmt. ¶ 9.) In January 2004, the state court entered a judgment dissolving the marriage. (Def. 7056-1 Stmt. ¶ 9; Pl. 7056-2 Stmt. ¶ 9.)

The judgment of dissolution required Stolz to pay child support and half of Cavagnetto's work-related daycare expenses. (Def. 7056-1 Stmt. ¶ 10; Pl. 7056-2 Stmt. ¶ 10.) It required Cavagnetto to pay her daycare expenses in the first instance and then to seek reimbursement from Stolz for his half. (Def. 7056-1 Stmt. ¶ 11A; Pl. 7056-2 Stmt. ¶ 11A.)[1]

On May 16, 2000, Cavagnetto obtained a court order allowing her to sell the Berwyn Property. (Def. 7056-1 Stmt. ¶ 11B; Pl. 7056-2 Stmt. ¶ 11B.) On July 10, 2000, the state court granted Stolz's motion to vacate that order and reconsider the disposition of the Berwyn Property. (Def. 7056-1 Stmt. ¶ 12; Pl. 7056-2 Stmt. ¶ 12.) Thereafter, in early 2002, Stolz sought leave from the state court to sell the Berwyn Property. (Def. 7056-1 Stmt. ¶ 14; Pl. 7056-2 Stmt. ¶ 14.) On February 1, 2002, the state court granted the motion and ordered that the Berwyn Property be listed for sale at fair market value. (Def. 7056-1 Stmt. ¶ 14; Pl. 7056-2 Stmt. ¶ 14.)

Cavagnetto, however, refused to sign the sales agreement for the Berwyn Property, for

---

[1] The parties each have two separate paragraphs numbered 11 in their 7056-1 and 7056-1 statements, respectively. The Court will cite to them as 11A and 11B.

3

which the state court held her in contempt and ordered her to pay Stolz $2,202.50 in attorney's fees. (Def. 7056-1 Stmt. ¶ 15; Pl. 7056-2 Stmt. ¶ 15.)

In response to Stolz's motion to sell the Berwyn Property, Cavagnetto also filed a lawsuit seeking to quiet title and alleging that Stolz and the Bartons committed fraud in connection with obtaining the mortgage. (Def. 7056-1 Stmt. ¶ 19; Pl. 7056-2 Stmt. ¶ 19.) In that lawsuit, Cavagnetto argued that the Bartons' mortgage was invalid. (Def. 7056-1 Stmt. ¶ 19; Pl. 7056-2 Stmt. ¶ 19.)[2] That lawsuit was originally filed in the chancery division of the state court, but was then consolidated with the Divorce Proceedings. (Def. 7056-1 Stmt. ¶ 19; Pl. 7056-2 Stmt. ¶ 19.)

After a trial on Cavagnetto's complaint, the state court found her complaint baseless and ordered her to pay Stolz $1,500.00 as a sanction under Illinois Supreme Court Rule 137. (Def. 7056-1 Stmt. ¶ 21; Pl. 7056-2 Stmt. ¶ 21.) Upon resolution of Cavagnetto's complaint, the Bartons received $101,292.08 in proceeds from the sale of the Berwyn Property as payment on their mortgage loan. (Def. 7056-1 Stmt. ¶ 18, 20, & 23; Pl. 7056-2 Stmt. ¶ 18, 20, & 23.)

On August 23, 2006, the state court held a hearing on a motion for contempt filed by Stolz in the Divorce Proceedings claiming that Cavagnetto had submitted false childcare invoices for reimbursement by Stolz. (Def. 7056-1 Stmt. ¶ 32; Pl. 7056-2 Stmt. ¶ 32.) The state court found that Cavagnetto had submitted false invoices and held her in contempt. (Def. 7056-1 Stmt. ¶ 33; Pl. 7056-2 Stmt. ¶ 33.) On October 2, 2006, the state court entered judgment on Stolz's motion and found that he had over-paid his share of daycare expenses in the amount of $5,952.85. (Def. 7056-1 Stmt. ¶ 34; Pl. 7056-2 Stmt. ¶ 34.)

Rather than order Cavagnetto to pay Stolz this amount, the state court gave Stolz a $5,952.85 credit against future daycare expenses. (Def. 7056-1 Stmt. ¶ 34; Pl. 7056-2 Stmt. ¶

---

[2] Among other things, Cavagnetto claimed her signature on the mortgage documents was a forgery, then she claimed she did not recall signing them. Those arguments were rejected by the state court. (Def. 7056-1 Stmt., Ex. B.)

34.) In addition to this credit, the state court ordered Cavagnetto to pay Stolz and/or his attorneys $7,375.43 "as and for contempt findings." (Def. 7056-1 Stmt. ¶ 35; Pl. 7056-2 Stmt. ¶ 35.)

Cavagnetto filed her bankruptcy case on December 31, 2009. (Def. 7056-1 Stmt. ¶ 31; Pl. 7056-2 Stmt. ¶ 31.)

## IV. APPLICABLE STANDARDS

A. Summary Judgment

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable by Federal Rule of Bankruptcy Procedure 7056); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based upon the evidence, a reasonable trier of fact could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When faced with cross-motions for summary judgment the court views all facts and draws all reasonable inferences in favor of the party against whom the motion is made. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 359 (7th Cir. 2011).

B. Exceptions to the Discharge of Debts

The discharge provided by the Bankruptcy Code is meant to effectuate the fresh start goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). This privilege is reserved for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor. *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992). The Seventh Circuit has stated that a § 523(a)(5) exception to discharge is